UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACY MITCHELL,<br><br>   Plaintiff,<br><br> v.<br><br>WILLIAMS, et al.,<br><br>   Defendants. | No. 2:10-cv-01829 KJM DAD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a former state prisoner[1] proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Before the court is defendants' motion for summary judgment.

**PLAINTIFF'S COMPLAINT**

Plaintiff alleges that while incarcerated at the California Medical Facility (CMF), defendants provided him, and conspired to provide him, inadequate medical care and subjected him to retaliation. Plaintiff has names as defendants Nurse Practitioner DeBrina Williams, Chief Medical Officer and Chief Deputy of Clinical Services Dr. Joseph Bick, and Chief Medical

---

[1] On June 5, 2013, plaintiff filed a notice of change of address, indicating that he was recently paroled, would be residing at the Volunteers of America (VOA) and that his mail should be sent to the VOA address in Oakland, California. (ECF No. 52.) On June 21, 2013, a court order sent to the Oakland address was returned by the U.S. Postal Service as undeliverable and unclaimed. Plaintiff has failed to keep the court apprised of his current address as required and has not filed any other documents with the court since his notice of change of address received by the court on June 5, 2013.

1

Officer for Inpatient Services Dr. Raymond Andreasen.

With respect to his inadequate medical care claim (first cause of action), plaintiff alleges as follows. On or about February 26, 2007, plaintiff experienced "bloody diarrhea and severe pain stemming form [sic] 'knots' and 'lumps' clustered under his left arm pit and chest." (ECF No. 1 at 6.) Plaintiff was seen by defendant Nurse Practitioner Williams and explained to Williams that his condition had worsened when he was treated with prednisone. (Id.) Defendant Williams became "enraged" and told plaintiff that she would not have plaintiff telling her how to do her job. (Id.) Defendant Williams then increased plaintiff's dosage of prednisone "knowing that such medication would further aggravate and agitate his painful, life threatening condition." (Id. at 7.) Plaintiff filed a complaint about the medical care provided to him by defendant Williams, but her actions were ratified by defendants Dr. Bick and Dr. Andreasen. (Id.)

With respect to his retaliation claim (second cause of action), plaintiff alleges that when he informed defendant Williams that he intended "to seek governmental redress[] against her if she refused to provide him with constitutionally adequate medical care[,]" defendant Williams threatened that plaintiff would be moved from the prison hospital unit and placed in administrative segregation. (Id. at 8.) Plaintiff claims that defendants Dr. Bick and Dr. Andreasen ratified defendant Williams' retaliatory' conduct by refusing to remedy the situation. (Id.)

In support of his conspiracy claim (third cause of action), plaintiff alleges that defendants Nurse Practitioner Williams, Dr. Bick and Dr. Andreasen "had a mutual meeting of the minds, in direct, or indirect participation by common design, to ratify the deprivations of noxious, and baneful medical care arising to the level of deliberate indifference, to plaintiff's known serious medical needs." (Id. at 9.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

/////

1   Under summary judgment practice, the moving party "initially bears the burden of
2   proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation,
3   627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
4   The moving party may accomplish this by "citing to particular parts of materials in the record,
5   including depositions, documents, electronically store information, affidavits or declarations,
6   stipulations (including those made for purposes of the motion only), admission, interrogatory
7   answers, or other materials" or by showing that such materials "do not establish the absence or
8   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to
9   support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden
10  of proof at trial, "the moving party need only prove that there is an absence of evidence to support
11  the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.);
12  see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after
13  adequate time for discovery and upon motion, against a party who fails to make a showing
14  sufficient to establish the existence of an element essential to that party's case, and on which that
15  party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure
16  of proof concerning an essential element of the nonmoving party's case necessarily renders all
17  other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so
18  long as whatever is before the district court demonstrates that the standard for entry of summary
19  judgment, . . ., is satisfied." Id. at 323.
20  If the moving party meets its initial responsibility, the burden then shifts to the opposing
21  party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
22  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
23  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
24  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
25  admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
26  Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the
27  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
28  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

1  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
2  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
3  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).
4        In the endeavor to establish the existence of a factual dispute, the opposing party need not
5  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
6  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
7  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
8  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
9  Matsushita, 475 U.S. at 587 (citations omitted).
10       "In evaluating the evidence to determine whether there is a genuine issue of fact," the
11 court draws "all reasonable inferences supported by the evidence in favor of the non-moving
12 party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is
13 the opposing party's obligation to produce a factual predicate from which the inference may be
14 drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
15 aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing
16 party "must do more than simply show that there is some metaphysical doubt as to the material
17 facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the
18 nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation
19 omitted).
20       With their motion for summary judgment, defendants have provided plaintiff with the
21 notice required by Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v.
22 Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (See ECF No. 41-1.)
23                              **THE ARGUMENTS OF THE PARTIES**
24 In support of their motion for summary judgment, defendants have filed a memorandum of points
25 and authorities, a separate statement of undisputed facts, declarations by the defendants with
26 attached medical records, the declaration of the Health Care Appeals Coordinator at CMF with
27 records attached thereto relating both to plaintiff administrative inmate appeals and the medical
28 /////

1   care provided to plaintiff, excerpts from plaintiff's deposition and plaintiff's responses to
2   discovery requests propounded by defendants.  (ECF No. 41.)
3       Following the filing of defendants' motion, plaintiff filed with the court a document
4   styled, "Opposition & Reply Motion To The Defendants [sic] Summary Judgment" and
5   "Emergency Request For The Appointment Of Counsel."  (ECF No. 47.)  Although titled as an
6   opposition to defendants' motion for summary judgment, therein plaintiff provided no arguments
7   or evidence in opposition to the defendants' motion pending before the court.  Rather, plaintiff
8   merely asked the court to deny the defendants' motion and contended in conclusory fashion "that
9   many disputed facts against him exist[.]"  (Id. at 2.)  The remainder of plaintiff's filing consisted
10  of argument in support of his request for the appointment of counsel.
11      Thereafter, defendants filed a reply, pointing out that plaintiff failed to comply with Rule
12  56 of the Federal Rules of Civil Procedure and Local Rules 230 and 260 with respect to opposing
13  a summary judgment motion.  On June 19, 2013, the court denied plaintiff's motion for
14  appointment of counsel and, in light of plaintiff's inadequate opposition, ordered plaintiff to file a
15  supplemental opposition to the pending motion.  (ECF No. 51.)  Although the court's order was
16  served on plaintiff at his address of record[2], it was returned to the court as undeliverable.  The
17  time for filing a proper opposition to the defendants' motion and to file a supplemental opposition
18  has passed.  Therefore, the court will now consider whether defendants have satisfied their initial
19  burden of proving the absence of a genuine issue of material fact and are entitled to summary
20  judgment in their favor as to plaintiff's causes of action.

21  **I.  Medical Care Claim**

22      Defendants argue that there is no evidence before the court on summary judgment
23  suggesting that that they were deliberately indifferent to plaintiff's serious medical needs.
24  Defendants rely on their own declarations and plaintiff's medical records to establish the
25  following undisputed facts:  On October 11, 2006, plaintiff was transferred to the inpatient unit

---

[2] As noted above, the court's order was served on plaintiff at Volunteers of America (VOA) in Oakland, California as directed by plaintiff in his notice of change of address filed with the court on June 5, 2013.  (ECF No. 52.)

5

(G3 OHU) at CMF because of exacerbation of his ulcerative colitis. (Mem. P&A, ECF No. 41-2, at 6.) That condition is a form of inflammatory bowel disease affecting the lining of the colon and rectum. (Id.) On November 28, 2006, plaintiff experienced an increase in rectal bleeding and consulted with Dr. Sogge, the gastroenterologist at CMF. (Id.) Dr. Sogge prescribed 20 mg of prednisone to be taken once a day. (Id.) Prednisone can cause some side effects, including increased blood sugar and avascular necrosis[3]. Prior to his transfer to the G3 unit, plaintiff had a history of diabetes and avascular necrosis in his hips. (Id.) Prior to his incarceration, plaintiff had been treated with prednisone. (Id.)

### A. Defendant Nurse Practitioner Williams

On February 26, 2007, plaintiff was seen by defendant Nurse Practitioner Williams. (Id. at 7.) At that time plaintiff complained of bloody diarrhea and that his symptoms had worsened. (Id.) Defendant Williams wrote an order to increase plaintiff's prednisone dosage from 20 mg once a day to 20 mg twice a day for ten days to manage plaintiff's rectal bleeding. (Id.) In defendant Williams' opinion, an increase dose of prednisone was medically necessary to manage plaintiff's rectal bleeding, that adjusting the dosage in this manner is standard practice for "ulcerative colitis flare-ups[,]" and that the "sooner the flare-up is treated, the less likely more aggressive treatment, such as hospitalization or surgery will be necessary." (Williams Decl. (ECF 41-6), ¶ 7 at 3.) Defendant Williams does not recall whether plaintiff requested an alternative medication to alleviate the pain purportedly caused by the prednisone. (Id., ¶ 8 at 3.) Defendant Williams declares that if plaintiff had done so she would have noted that request in his chart but still would not have prescribed a different medication because the "dose of prednisone must be tapered to avoid withdrawal symptoms." (Id., ¶ 8 at 3-4.) Defendant Williams also declares that although "prednisone may cause some side effects such as avascular necrosis and/or diabetes, the increase in prednisone on February 26, 2007 was medically necessary to effectively manage MITCHELL's rectal bleeding." (Id., ¶ 9 at 4.)

/////

---

[3] Defendants explain that avascular necrosis is cellular death in the bone tissue. (ECF No. 41-2 at 6.)

6

As for plaintiff's complaints that he was experiencing chest pains and knots, defendant Williams states that she ordered a chest x-ray of plaintiff on March 26, 2007 and that "[t]he x-ray was negative for any acute diseases." (Id.)  Based on this undisputed evidence defendant Williams contends that she was not deliberately indifferent to plaintiff's serious medical needs, that she provided reasonable care consistent with community standards, and that plaintiff's disagreement with the medical treatment he received does not rise to the level of deliberate indifference in violation of the constitution.  (ECF 41-2 at 13-14.)

**B. Defendant Dr. Bick**

Defendant Dr. Bick is a California licensed physician and surgeon.  (ECF 41-7 at 2.) Between 2007 and 2010, Dr. Bick was the Chief Deputy of Clinical Services at CMF.  (Id.)  Since 2010, he has held the position of Chief Medical Executive for Clinical Services and in that position; he is responsible for the day-to-day supervision of field health operations.  (Id.) Defendant Dr. Bick declares that he never treated plaintiff, never prescribed plaintiff prednisone, and did not review any inmate appeal filed by plaintiff.  (Id.)  Dr. Bick's only involvement with plaintiff was to approve medical referrals or chronos.  (Id.)  Defendant Dr. Bick declares that at no time did he intentionally or knowingly cause plaintiff to experience any pain, suffering or injury, nor did he refuse plaintiff necessary care or treatment.  (Id. at 3.)

**C. Defendant Dr. Andreasen**

Defendant Dr. Andreasen is a California licensed physician and surgeon.  (ECF 41-8 at 1.) He has been employed by the California Department of Corrections and Rehabilitation as a physician and surgeon since January of 1991.  (Id. at 2.)  Dr. Andreasen was defendant Nurse Practitioner Williams' direct supervisor in February 2007.  (Id. at 4.)  Between 1993 and approximately 2011, Dr. Andreasen was the Chief Medical Officer (CMO) for Inpatient Services at CMF.  (Id. at 2.)  In 2006, defendant Dr. Andreasen approved a chrono to have plaintiff transferred to the G3 outpatient housing unit for six months because of the exacerbation of plaintiff's ulcerative colitis.  (Id.)  On October 2, 2007, defendant Dr. Andreasen reviewed Dr. Zhu's response to plaintiff's inmate appeal concerning the increase of his prednisone dosage and partially granted that inmate appeal at the first level of review.  (Id. at 3.)  Defendant Dr.

7

1   Andreasen noted that on several prior occasions, multiple medical providers other than defendant
2   Williams had increased plaintiff's dosage of prednisone for short periods of time. (Id.) He also
3   noted that a chest x-ray was conducted in response to plaintiff's complaint about "knotting up"
4   with no acute disease being discovered as a result. (Id.) Finally, defendant Dr. Andreasen notes
5   that Dr. Zhu did not find any evidence supporting plaintiff's claim that defendant William's had
6   threatened to transfer plaintiff out of G3. (Id.)

7        Defendant Dr. Andreasen declares that aside from reviewing plaintiff's inmate appeal at
8   the first level, his involvement with plaintiff's medical care was limited. (Id.) Dr. Andreasen did
9   not prescribe prednisone for plaintiff and does not recall ever speaking to defendant Nurse
10  Practitioner Williams about increasing plaintiff's dosage of prednisone. (Id. at 4.) Nevertheless,
11  defendant Dr. Andreasen states that in his opinion, the increase in dosage of prednisone was
12  appropriate and within community standards. (Id.) He also declares that the increase in dosage
13  for only ten days was not a major medication adjustment that would warrant a consultation
14  between defendants Nurse Practitioner Williams and himself. (Id.) Lastly, defendant Dr.
15  Andreasen denied conspiring with defendants William or Bick to violate plaintiff's constitutional
16  rights. (Id.)

17  **II.  Retaliation Claim**

18       Defendants also argue that there is no evidence before the court on summary judgment
19  suggesting that they retaliated against plaintiff. As noted above, plaintiff alleges that defendant
20  Williams threatened plaintiff that she would have him removed from the hospital unit. In moving
21  for summary judgment defendants note that the undisputed evidence before the court establishes
22  that plaintiff remained in the hospital unit at CMF from October 11, 2006 through November 14,
23  2007, which was far longer than the six months that he was originally scheduled to remain in that
24  unit. (ECF No. 41-2 at 17.) Defendants contend that the evidence on summary judgment
25  establishes that plaintiff was finally discharged from the hospital unit only when his ulcerative
26  colitis was successfully brought under control and he no longer required hospital care. (Id.)
27  Finally, defense counsel notes that there is no evidence before the court on summary judgment
28  /////

suggesting that defendants Dr. Bick and Dr. Andreasen knew of or ratified any acts of retaliation against plaintiff. (Id. at 17-18.)

**III. Conspiracy Claim**

Defendants next argue that there is no evidence before the court on summary judgment that they agreed to violate plaintiff's constitutional rights. (Id. at 18.) Instead, defendants argue that the undisputed evidence before the court establishes that the decision to increase plaintiff's dosage of prednisone was made solely, and appropriately, by defendant Nurse Practitioner Williams. (Id.) Furthermore, although the evidence reflects that defendant Dr. Andreasen was defendant Williams' supervisor, defense counsel argues that there is no evidence before the court suggesting that defendants Andreasen or Williams shared a common objective to violate plaintiff's constitutional rights. (Id.)

**ANALYSIS**

**I. Medical Care Claim**

**A. Legal Standards Applicable to an Eighth Amendment Claim**

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, including mental health care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. See also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994); Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that

/////

need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).

**B. Discussion**

The court finds that defendants have carried their initial burden on summary judgment of proving that they were not deliberately indifferent to plaintiff's serious medical needs. The evidence submitted by defendants in support of their motion for summary judgment demonstrates that defendant Nurse Practitioner Williams was following an accepted course of treatment for plaintiff's ulcerative colitis and that plaintiff had in the past been treated with similar increased doses of prednisone when he suffered flare-ups with his ulcerative colitis condition. As noted,

1  plaintiff has submitted no evidence to the contrary and the allegations of his complaint reflect a
2  mere differences of opinion between plaintiff and prison medical staff as to the proper course of
3  medical treatment. However, such differences of opinion as to the proper medical care for
4  plaintiff's ulcerative colitis do not give rise to a cognizable § 1983 claim. See Toguchi, 391 F.3d
5  at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240,
6  242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition, the
7  evidence before the court on summary judgment establishes that defendant Williams did not
8  ignore plaintiff's complaints about chest pains and knots. Rather, the evidence reflects that
9  defendant Williams ordered that an x-ray be taken to diagnose plaintiff's condition. There is no
10 evidence before the court on summary judgment that defendant Williams was deliberately
11 indifferent to plaintiff's medical conditions or his medical care. Therefore, summary judgment
12 should be granted in favor of defendant Williams with respect to plaintiff's claim that he received
13 inadequate medical care in violation of his rights under the Eighth Amendment.

14      As to defendant Dr. Bick, there is no evidence before the court on summary judgment that
15 he was involved in plaintiff's medical care. Rather, the evidence establishes that Dr. Bick never
16 treated plaintiff nor prescribed plaintiff prednisone. According to the evidence before the court
17 defendant Dr. Bick's only tangential involvement in plaintiff's medical care was that he served in
18 the capacity as a supervisor for clinical services. However, supervisory personnel are generally
19 not liable under § 1983 for the actions of their employees under a theory of respondeat superior.
20 See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441
21 (9th Cir. 1978). Therefore, given the undisputed evidence before the court summary judgment
22 should be granted in favor of defendant Dr. Bick with respect to plaintiff's Eighth Amendment
23 claim as well.

24      Turning to defendant Dr. Andreasen, the evidence on summary judgment establishes that
25 he was defendant Williams' supervisor. However, that evidence also reflects as follows. Dr.
26 Andreasen's involvement with plaintiff's medical care was limited to reviewing plaintiff's inmate
27 appeal regarding his medical care at the first level of review. Dr. Andreasen did not prescribe
28 prednisone for plaintiff and does not recall ever speaking to defendant Nurse Practitioner

Williams about increasing plaintiff's dosage of prednisone.  Moreover, in Dr. Andreasen's opinion the increase in plaintiff's prednisone dosage was in keeping with the standard of care and was not a major medication adjustment that would even warrant a consultation between defendant Nurse Practitioner Williams and himself.  In short, there is no evidence before the court on summary judgment that defendant Dr. Andreasen was deliberately indifferent to plaintiff's serious medical needs.  Given the undisputed evidence before the court Dr. Andreasen's supervisory position alone is insufficient to establish any liability on his part.  Therefore, defendant Dr. Andreasen is entitled to summary judgment in his favor with respect to plaintiff's Eighth Amendment claim as well.

## II. Retaliation Claim

### A. Legal Standards Applicable to a Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. April 25, 2005).  In addition, plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's actions.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Hines v. Gomez, 108 F.3d 265, 267–68 (9th Cir.1997) (inferring retaliatory motive from circumstantial evidence).

### B. Discussion

Here, at the summary judgment stage of these proceedings plaintiff has come forward with no evidence that an adverse action was taken against him.  Rather, the undisputed evidence before the court establishes that plaintiff was not removed from the hospital unit following defendant Williams' alleged statement but instead remained in the hospital unit longer than scheduled.  It is also undisputed that plaintiff was not discharged from the hospital unit until his ulcerative colitis was under control.  Establishing that an adverse action was taken against him by a state actor is an essential element of plaintiff's retaliation claim.  Because plaintiff has failed to

come forward with any evidence with respect to that element upon which he bears the burden of proof, summary judgment should be granted in favor of the defendants with respect to plaintiff's retaliation claim.

**III. Conspiracy Claim**

    **A. Legal Standards Governing a Conspiracy Claim**

To prevail on a conspiracy claim brought under § 1983, plaintiff must allege and prove that the defendants reached an agreement or a meeting of the minds to violate plaintiff's constitutional rights and took some concerted action in furtherance of that agreement. See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir.2002); Gilbrook v. City of Westminster, 177 F.3d 839, 856–67 (9th Cir.1999); Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989); Fonda v. Gray, 707 F.2d 435, 438 (9th Cir.1983). Although each of the defendants does not need to know the exact details of the plan, each defendant must share a common objective of the conspiracy. See Franklin, 312 F.3d at 441; Fonda, 707 F.2d at 438.

    **B. Discussion**

As defendants have argued, at summary judgment plaintiff has failed to come forward with any evidence that there was a conspiracy among the defendants to provide plaintiff inadequate medical care. Rather, the evidence before the court on summary judgment demonstrates that the decision to increase the prednisone dose was made solely and appropriately by defendant Nurse Practitioner Williams. In the absence of any evidence, plaintiff's vague and conclusory allegations of a conspiracy cannot withstand defendants' adequately supported motion for summary judgment. See Woodrum, 866 F.2d at 1126; Fonda, 707 F.2d at 438. Therefore, defendants' motion for summary judgment with respect to plaintiff's conspiracy claim should be granted as well.

**IV. Conclusion**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (EFC No. 41) be granted; and
2. This action be dismissed.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 15, 2013

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
mitc1829.57